**Guy A. GREEN, Plaintiff,**

v.

**KINNEY SHOE CORPORATION, Defendant.**

**Civ. A. No. 88–0365.**

United States District Court, District of Columbia.

May 5, 1989.

Gary S. Marx, Robert N. Levin and Philip Hudock, Hudock & Levin, Washington, D.C., for plaintiff.

A. Neal Barkus, Hunton & Williams, Washington, D.C., for defendant.

## MEMORANDUM AND ORDER

REVERCOMB, District Judge.

Defendant Kinney Shoe Corporation in this racial employment discrimination suit has moved *in limine* to restrict the plaintiff from offering statistical evidence comparing the proportion of blacks hired to be Foot Locker store managers in the Washington, D.C., area to the racial composition of the area labor force as a whole. In addition, the plaintiff has moved for reconsideration and clarification of a previous order of the Court prohibiting the plaintiff from presenting expert testimony to the effect that the defendant's use of subjective hiring criteria and lack of an affirmative action program evidenced a disregard for nondiscriminatory hiring. In this memorandum, the Court denies in part defendant's motion, denies the plaintiff's motion for reconsideration, and clarifies its previous order.

### I. *Motion In Limine on the Statistical Issue*

It is clear that statistical evidence is admissible as circumstantial evidence in a discrimination case—even in an individual discrimination suit. *Davis v. Califano*, 613 F.2d 957, 962 (D.C.Cir.1979).

The defendant notes correctly that the seminal case of *Hazelwood School District v. United States*, 433 U.S. 299, 308, 97 S.Ct. 2736, 2741, 53 L.Ed.2d 768 (1977), established that the appropriate test usually is *not* to compare the proportion of blacks hired by the employer with the proportion of blacks in the labor force as a whole, but rather to compare the proportion of blacks hired by the employer with the proportion of blacks having the minimum necessary qualifications for the employer's job. This makes sense, because the proportion of blacks among those qualified may, for various nondiscriminatory reasons, be lower than the proportion of blacks in the labor force.

■ In the instant case, Kinney protests the use of Washington, D.C., area labor force data. Indeed, Kinney contends that the appropriate test would compare the proportion of blacks hired to be Foot Locker store managers in the area with the proportion of blacks who had successfully completed the defendant's management training program. Instead of granting the defendant's motion, however, the Court instead ORDERS Kinney to provide to the plaintiff's expert as soon as possible the proportion of blacks in the area who have successfully completed the training program. This figure should be easily ascertainable and could be analyzed by the expert in one day.[1]

The Court also notes that entrance into the defendant's management program, unlike the teaching qualification in *Hazelwood*, is within the control of the defendant, and that potential trainees theoretically could have been subject to discrimination that prevented them from entering the program. Moreover, because the formal qualifications for a shoe store manager are doubtless less rigorous and less crucial than those for a teacher, the Court believes that the plaintiff's test might also be probative as circumstantial evidence. Therefore, the Court will decide at trial whether to permit the plaintiff's expert to introduce his comparison of the proportion of blacks in the area labor force with the proportion of blacks hired to be the defendant's store

---

1. The Court was bothered by the fact that the objection to this flaw in a crucial piece of the plaintiff's statistical case was presented to the Court only 26 days before trial, well after the time discovery had closed, well after the plaintiff's expert submitted his 26(b)(4) statement, and after the Court had already granted a motion *in limine* by the defendant challenging the plaintiff's use of expert testimony.

managers. The Court notes that the defendant would be free to argue that these statistics are not probative of discriminatory intent. *See Davis,* 613 F.2d at 964.[2]

### II. Motion for Reconsideration and Clarification

■ The plaintiff moves the Court to reconsider its order ruling that the plaintiff may not present expert testimony to the effect that use of a subjective hiring process is very probative of discriminatory intent. The plaintiff has cited cases expressing the obvious fact that use of subjective criteria may be more susceptible to discriminatory use than is the use of objective criteria. *See, e.g., Davis,* 613 F.2d at 965–66. Indeed, the plaintiff will be permitted to make this argument at trial. What the Court will not permit is expert testimony that might lead the jury to be overly suspicious of the use of subjective standards. Use of subjective evaluation may be necessary for many jobs when (1) no accurate test can be made or when (2) it is too expensive or time-consuming to create objective standards. This is especially true in fields such as retail store salesmanship, in which the quality of work may not easily be reducible to an objective standard. Accordingly, the plaintiff's motion for reconsideration is DENIED.

■ Finally, the plaintiff requests a clarification of the Court's order refusing to permit the plaintiff to offer expert testimony on the defendant's lack of an affirmative action program. The plaintiff wants to know whether evidence of this lack may be admissible at all. The Court believes that admitting this fact probably will be redundant because the plaintiff is already planning to admit evidence that there were hardly any blacks managing Kinney's Washington area stores. While lack of an affirmative action program is not very probative, *EEOC v. Judson Steel Co.,* 33 Fair Empl.Prac.Cases 1286, 1294, 1982 WL 227 (N.D.Cal.1982), the Court ORDERS that the plaintiff is permitted to ask whether Kinney had an affirmative action program at the management level. Such evidence may be admitted as part of the total picture of the defendant's hiring process. The defendant of course will be permitted to argue that the lack of such a program is not very probative of whether the defendant's acted discriminatorily in regard to Mr. Green.

---

2. The Court does not accept the plaintiff's argument that comparing the percentage of blacks in the labor force with the percentage of blacks hired by the defendant is always an appropriate test. It is true that courts have expressed the general idea that "absent explanation, it is ordinarily to be expected that nondiscriminatory hiring practices will in time result in a work force more or less representative of the racial and ethnic composition of the population in the community from which the employees are hired." *Teamsters v. United States,* 433 U.S. 324, 339 n. 20, 97 S.Ct. 1843, 1856 n. 20, 52 L.Ed.2d 396 (1977). However, courts have wisely not mandated that this goal be the law. There are many nondiscriminatory reasons why an employer's work force, especially those for high-level positions, may not resemble the labor force. For example, the percentage of blacks in positions for which educational experience is preferred might be expected to be lower than the percentage of blacks in the community at large, because of the simple and persisting fact that a higher percentage of whites graduate from high school and a higher percentage of whites graduate from college. Put simply, the "over time" aspect of the wish mentioned in *Hazelwood* has not yet come to pass.